Filed 10/30/14  In re T.B. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re T.B. et al., Persons Coming Under the Juvenile Court Law. | B252905 (Los Angeles County Super. Ct. No. CK28454) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J. B. et al.,<br><br>        Defendants and Appellants,<br><br>T.B. et al.,<br><br>        Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marilyn Mordetzky, Referee.  Reversed and remanded with directions.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant J. B.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant Tyrone B.

No appearance for Plaintiff and Respondent.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Objectors and Respondents (Minors).

_____

Two years after the juvenile court terminated dependency jurisdiction with a legal guardianship in place, Tyrone B. (Father) and J. B. (Mother) each filed a petition under Welfare and Institutions Code section 388,[1] seeking an order placing their sons with either or both of them, and/or an order reinstating (Mother)/granting (Father) reunification services. Judge Mark Borenstein reviewed Father's petition and granted him an evidentiary hearing, finding the best interests of the children might be promoted by the requested change in order. Judge Patricia Spear reviewed Mother's petition and granted her an evidentiary hearing based on the same finding. The Los Angeles County Department of Children and Family Services (DCFS) filed responses to the section 388 petitions, recommending the juvenile court grant the petitions and order reunification services for Father and Mother. A third judicial officer, Referee Marilyn Mordetzky, reviewed the matter and denied the section 388 petitions without affording Father and Mother the evidentiary hearing previously ordered.

Father and Mother appeal from the order denying their section 388 petitions, contending the juvenile court abused its discretion in declining to hold an evidentiary hearing. DCFS did not file a respondent's brief on appeal, explaining in a letter to this court that its position was aligned with that of Father of Mother. The children's counsel filed a respondents' brief, urging this court to uphold the denial of the petitions on grounds the petitions did not show changed circumstances or that the requested order was in the children's best interests. We agree with Father and Mother's contentions the juvenile court (Referee Mordetzky) abused its discretion in denying their section 388

_____

[1] Further statutory references are to the Welfare and Institutions Code.

2

petitions without holding an evidentiary hearing after judicial officers previously found Father and Mother made the requisite showing to require an evidentiary hearing. Accordingly, we reverse and remand the matter for the required hearing.

## BACKGROUND

**Prior Dependency Proceedings**

DCFS and the juvenile court first became involved with this family in 1997 when Father and Mother's first born son, T.B., was an infant. Mother was 16 years old when the juvenile court sustained counts in a dependency petition under section 300, subdivision (b), that (1) Mother was a minor and lacked the resources to provide for T.B., and (2) Mother used marijuana on at least two occasions. In June 1997, the court declared T.B. a dependent child. Mother failed to reunify with T.B., and the court appointed the maternal grandmother T.B.'s legal guardian. In 2001, the court terminated the legal guardianship and allowed Mother to regain care, custody and control of T.B. It is not clear from the record whether Father was involved with Mother and T.B. during this period.

In January 2008, DCFS again became involved with this family. T.B. was 10 years old, and Father and Mother now had three more sons: Ju.B. (6), D.B. (4), and Jo.B. (2). In June 2008, the juvenile court sustained counts in a dependency petition under section 300, subdivision (b), that (1) Father and Mother engaged in violent altercations in the children's presence, Father had convictions for corporal injury to a spouse, battery and assault with a firearm, and Mother failed to protect the children by allowing Father to live with the children; (2) Mother had an unresolved history of substance abuse, including marijuana, and had a drug pipe in the home where the children could access it; (3) Father had a history of substance abuse, had a drug pipe in the home where the children could access it, was a current abuser of alcohol, and had a conviction for driving under the influence; and (4) Father and Mother left the children in the home for days at a time without making a plan for the children's care and supervision. The court ordered family preservation services for Mother, and apparently allowed the children to remain in or return to the home at some point with Mother. The court did not order reunification

3

services for Father because he was incarcerated in 2008 after DCFS opened the case, on a charge not specified in the record, and he would remain incarcerated until 2011.

In December 2009, Mother tested positive for cocaine. DCFS detained the children from Mother's care and supervision. In January 2010, the juvenile court sustained counts in a supplemental petition that (1) Mother failed to comply with court orders requiring her to participate in random drug testing and family preservation services, and she had the positive toxicology screen for cocaine in December 2009; and (2) Mother had a history of petty theft convictions. The court terminated Mother's reunification services. Mother was incarcerated in 2010 and released a year later in 2011 on a charge not specified in the record.

On December 1, 2010, the juvenile court filed letters of guardianship, appointing the children's paternal grandmother, Barbara G., as the children's guardian. The children lived in New Jersey with Barbara. On June 29, 2011, the court filed letters of guardianship, appointing Barbara G. and the children's paternal aunt, D. G., as the children's co-guardians. Also on June 29, 2011, the court terminated dependency jurisdiction. Barbara G. died in December 2012. The children remained living in New Jersey with D.

**Section 388 Petitions**

On April 5, 2013, Father filed his section 388 petition, seeking an order granting him reunification services and expressing his desire to have custody of the children. He explained, since his release from incarceration in 2011, he had had stable housing for two years and had been employed for one year and nine months. He had maintained daily contact with the children and had visited them in New Jersey. Father stated, due to his changed circumstances, all parties supported his request for a change in order and believed it would be better for the children to be reunified with him.

On May 6, 2013, Judge Mark Borenstein signed an order granting Father a hearing on his section 388 petition, finding the best interests of the children may be promoted by the requested change in order. On June 18, 2013, the date set for the hearing on Father's petition, the juvenile court (Judge Borenstein) appointed counsel for Father and explained

4

the court needed to continue the hearing because the clerk did not send notice of the hearing to all parties. Therefore, DCFS did not file a report responding to Father's petition, and minors' counsel did not interview the children. The court set the evidentiary hearing for August 12, 2013, ordered DCFS to file its report by August 6, 2013, and set August 8, 2013 as the due date for the parties to file witness and exhibit lists.

On August 12, 2013, the date set for the evidentiary hearing on Father's petition, DCFS filed its report, recommending the juvenile court grant Father's petition and order reunification services and a case plan for Father. DCFS also recommended the court order Father to live apart from Mother because Mother had previously failed to comply with the juvenile court's orders (as noted above).

In the August 12, 2013 report, DCFS summarized the information Father provided in his August 2, 2013 interview with the dependency investigator. While incarcerated, Father completed parenting and carpentry classes, worked in the kitchen, and attended Alcoholics Anonymous meetings. He wrote letters to his children and called them daily. Since his release from incarceration, Father had visited the children in New Jersey three times. The expense of traveling from California to New Jersey prohibited more frequent visitation.

After his release from incarceration, Father worked at a hotel in Hollywood from June 2011 to March 2013. He left his employment, and the apartment he had been living in for two years, to help care for the children's maternal grandmother who had been in an accident. He and Mother moved to Lancaster to live with the maternal grandmother. In June 2013, Father obtained new employment in Lancaster, and was still employed. He was sober, attending drug counseling, and drug testing monthly as a condition of parole. He was scheduled to be released from parole in March 2014. Father planned to enroll in college "to attend the solar program being offered."

Father told the investigator he wanted to reunify with his children and was willing to move apart from Mother if that was a condition of the court granting him reunification services. He wanted to regain custody of his children. At the time the investigator

5

prepared the report, she had not yet interviewed the children or their guardian regarding Father's request for reunification services.

At the August 12, 2013 hearing, minors' counsel requested a continuance of the hearing on Father's section 388 petition because she had not been able to reach the children to discuss the matter with them. DCFS's counsel also requested additional time, explaining DCFS needed "to address what the impacts of the recommendations are on the guardianship, because they're recommending to basically have two permanent plans." Counsel appointed that day to represent Mother stated Mother would be filing a section 388 petition of her own. The juvenile court (Judge Patricia Spear) continued the matter to September 27, 2013, and ordered DCFS "to analyze the impact of reopening the case on funding for the guardianship." Mother's counsel informed the court Mother was willing to submit to drug testing because Mother's substance abuse was a jurisdictional finding in the prior dependency proceedings. The court did not believe it could order drug testing for Mother unless it reopened jurisdiction in the case.

On August 22, 2013, Mother filed her section 388 petition, seeking an order returning the children to her custody or Father's custody, and/or reinstating her reunification services.[2] In support of her petition, Mother stated she had been sober for more than three and one-half years and had "refrained from" domestic violence. She also had steady employment as a data collector and stable housing. She maintained constant telephone contact with the children and paid for their cellular telephone service. She also had "weekly Skype sessions with the children." She addressed the children's behavioral issues during telephone calls. She visited the children in New Jersey in January 2013. Mother stated, "the children always spontaneously communicate to [her] their desire to return home to [her] and their father in California." She noted one of the children's two legal guardians died in December 2012.

---

[2] On September 30, 2013, Mother filed an amended section 388 petition, making clear she was seeking the change in order regarding all four children and not only T.B. as inadvertently indicated in the original August 22, 2013 petition.

6

On August 28, 2013, Judge Spear signed an order granting Mother a hearing on her section 388 petition, finding the best interests of the children may be promoted by the requested change in order. The juvenile court set the hearing for September 23, 2013.

On September 23, 2013, DCFS filed its report responding to Mother's section 388 petition. DCFS recommended the juvenile court grant Mother's petition and order reunification services and a case plan for Mother because "mother appears to have matured during the last three years and she appears ready to take on the responsibility of being a full time parent to the children." DCFS also recommended the court order Mother to live apart from the maternal grandmother because the maternal grandmother was "involved criminally with the mother in 2009" and had made "negative comments regarding the paternal side of the family to the children" during the prior dependency proceedings.

In the September 23, 2013 report, DCFS summarized the information Mother provided in her September 19, 2013 interview with the dependency investigator. Mother had been sober for a few years. She had not engaged in any criminal activity since her release from incarceration in 2011. She obtained housing and employment upon her release, and also submitted to drug testing. She and father lived together and were "working to regain custody of the children." They also were working on their relationship and Mother stated she would speak to Father about the investigator's suggestion that Mother and Father attend couples counseling. Mother was willing to live apart from the children's maternal grandmother if that was a condition of the court granting her reunification services. In the event the court denied her request for reunification services, she was hopeful the children would reunify with Father.

DCFS reported that Father and Mother's three youngest sons, Ju.B. (12), D.B. (10), and Jo.B. (8), wanted to return to California to live with Father and Mother. The oldest son, T.B. (16), wanted to finish high school in New Jersey where he was a football player and being scouted by college football programs. T.B. was supportive of Father and Mother's efforts to regain custody of his three younger brothers.

7

DCFS also reported: "The legal guardian [D. G.] is in favor of the mother [and father] receiving Family Reunification Services as the children want to return to their parents, both mother and father." D. confirmed that Mother maintained telephone contact with the children and paid for their cellular telephone service. According to D., Mother only visited the children in New Jersey once when D. paid for Mother and Father to fly to New Jersey for the paternal grandmother's funeral. Although D. did not have a good relationship with Mother, she approved of the children returning to both parents because she wanted the children to be happy. D. expressed some reservation, however, because the children were doing well in New Jersey and she did not want them uprooted unless Father and Mother were ready to be good parents. D. wanted Mother to stop telling the children they would be back with her in California in six months in case it did not happen. D. supported T.B.'s desire to remain with her in New Jersey, as did Mother and Father.

On September 23, 2013, the date set for the hearing on Mother's section 388 petition, the juvenile court (Referee Mordetzky) continued the matter to October 11, 2013. The minute order from the hearing states the court "continue[d] the matter for the court and counsel to further investigate the court granting Mother's [section] 388 petition."

On September 27, 2013, DCFS filed a supplemental report regarding Father's section 388 petition. DCFS reported Father was participating in an alcohol and drug program, had attended 11 of the 20 required sessions, and had tested negative. Father also was participating in a parenting program and had attended three sessions in the 12-session program. DCFS continued to recommend the juvenile court order reunification services and a case plan for Father.

On September 27, 2013, the date set for the continued hearing on Father's section 388 petition, the juvenile court (Referee Mordetzky) continued the matter to October 11, 2013, so it could be heard with Mother's section 388 petition. The court stated: "October 11, 2013 is not set for a contest. It's set for whether in fact, based on the declaration, which would be the response to the 388, the actual 388 filed by the parents,

8

whether there is reason to grant what they are requesting and if there is no reason to grant what they are requesting it is because it would not be in the best interest of the child or there's no change of circumstances, based on the declarations alone, it would be denied. [¶] If there's an issue that the court thinks would be the best interest of the children, that will be set for contest. [¶] Is that understood?" Mother's counsel responded, "Yes." None of the other attorneys responded, including the attorney standing in that day for Father's counsel.

On October 11, 2013, DCFS filed a supplemental report in response to the section 388 petitions. DCFS reported Father and Mother came into a DCFS office on October 9, 2013 to meet with the dependency investigator. Father brought documentation showing he had attended five sessions of his parenting program. According to DCFS, Father missed one session on September 24, 2013. Mother brought documentation showing she had enrolled in an alcohol and drug program on October 2, 2012, and had enrolled in a parenting program in which she had attended three sessions since August 27, 2013. The investigator interviewed Father and Mother together and separately and noted "there was tension between them."

Mother informed the dependency investigator she planned to move from the home of the children's maternal grandmother and live by herself. The investigator stated in the October 11, 2013 report: "The mother reported that she does not want anything to stand in the way of the possibility of her receiving Family Reunification Services and she wants to prove that she is responsible and is now in a position to provide and care for the children. . . . The mother also reported that she and [Father] have different things to prove and it is best that they not live together at this time. She reported that there [may be] a possibility that eventually the[y] will get back together, however, if not she will be prepared whether she received Family Reunification Services or he receives Family Reunification Services." Mother remained employed.

After leaving the DCFS office on October 9, 2013, Father called the dependency investigator and informed her he planned to move out of the maternal grandmother's home in early November 2013 to live on his own. Father explained: "'Well she

9

[Mother] is moving her way and I am moving my way for a time. Maybe later we can come together. We both have things to prove . . . . Things have changed and we have differences; no problems, just a decision that was made.'" The investigator suggested to Father that he and Mother go to counseling to address the past and present issues in their relationship. Father was amenable to the suggestion, and stated he would speak with Mother and "'get on this immediately." Father also told the dependency investigator he remained employed in a "'secure'" job which allowed him to work overtime, and he was "'trying to find a second job.'" Father further reported he was in compliance with the terms of his parole and continued to drug test.

As stated in its October 11, 2013 supplemental report, DCFS continued to recommend that the juvenile court order reunification services and case plans for Father and Mother. DCFS also recommended Father and Mother attend counseling to address the issues which led to the prior dependency jurisdiction. DCFS believed "It would be in the best interest of all parties that the prior issues be addressed in order for [Father and Mother] to fully focus on the children if and when the children are returned to their care and custody."

At the hearing on October 11, 2013, the juvenile court (Referee Mordetzky) stated it had read Father's and Mother's section 388 petitions and DCFS's reports in response and was prepared to decide "whether in fact the court should set this for evidentiary hearing." The court commented: "If the court were going to set this for evidentiary hearing, there would have to be some pretty strong facts that would indicate that there are clearly a change of circumstances and that those change of circumstances [are] in the best interests of the children. [¶] The court has read that they are changing circumstances, but clearly not changed circumstances that would be in the best interest to go ahead and run the risk and it would be a total risk if this legal guardian was not getting any funding once the court granted any type of 388 that will provide for reunification services for these parents on the chance that they may or may not be able to prove to this court that they can have custody of their children."

10

Father's counsel pointed out the court already had set the matter for a hearing and he was entitled to a contested hearing. Father's counsel and Mother's counsel also argued their clients had shown changed circumstances in their section 388 petitions. Regarding the funding issue the court raised, Mother's counsel pointed out there was nothing in the record indicating how much money D., the legal guardian, received or needed. Minors' counsel commented: "The kids definitely are hoping that their parents fulfill. They want to be with their father, but I think right now, in light of the fact the parents are not prepared at this time, based on the long history, I think that you are -- I think it's almost selfish, they're risking the caretaker's funding on a chance they might or might not reunify and then screwing the caretaker out of the funding. [¶] It almost sounds strategic." Counsel for DCFS did not make any comments at the hearing.

The juvenile court concluded the hearing by stating: "These parents are here in this state, and the children are in New Jersey. So based on that, there is not a showing of a change [of] circumstances but rather a changing circumstance, and that it's not in the best interest of the children to grant the matter for an evidentiary hearing, the 388's are denied."

## DISCUSSION

Mother and Father contend the juvenile court abused its discretion in declining to hold an evidentiary hearing on their section 388 petitions. We agree.

Under section 388, subdivision (a)(1), "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified . . . and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . ." (§ 388, subd. (d).)

11

"A petition under this section must be liberally construed in favor of its sufficiency. [Citation.] Thus, if the petition presents *any* evidence that a hearing would promote the best interests of the child, the court must order the hearing. [Citation.] The court may deny the application ex parte only if the petition fails to state a change of circumstance or new evidence that even *might* require a change of order or termination of jurisdiction." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.) A parent need only show "'probable cause,'" not "a probability of prevailing" on the petition, to be entitled to an evidentiary hearing on a section 388 petition. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432.)

"The juvenile court's determination to deny a section 388 petition without a hearing is reviewed for abuse of discretion. [Citations.] We must uphold the juvenile court's denial of appellant's section 388 petition unless we can determine from the record that its decision[] '"exceeded the bounds of reason."'" (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

Father and Mother each presented a section 388 petition showing both (1) a change of circumstance, and (2) the best interests of the children might be promoted by the proposed change in order. Father's petition stated he was no longer incarcerated and had maintained stable housing and employment since his release from incarceration two years before. He had daily contact with the children by telephone, and had visited them in New Jersey. Father stated all parties agreed with his request for reunification services due to his changed circumstances. His request was supported by DCFS, the children's legal guardian, the children, and Mother.

Mother's petition stated she had been sober for more than three years. She had stable housing and steady employment. She lived with Father and their relationship was free from domestic violence. She maintained constant telephone contact with the children and paid for their cellular telephone service. She addressed the children's behavioral issues during telephone calls. She also had weekly Skype sessions with the children. She visited them in New Jersey in January 2013. The children had communicated to her that they wanted to live with her and Father in California. Her

request for reunification services was supported by DCFS, the children's legal guardian, the children, and Father.

At the time they filed their petitions, neither Father nor Mother knew minors' counsel would be unsupportive of their requests. The three younger sons had made clear they wanted to live with Father and Mother in California. The oldest son, who wanted to remain in New Jersey, was supportive of Father's and Mother's requests for reunification services and their requests to gain custody of their three younger sons.

Judge Borenstein made a finding the best interests of the children might be promoted by Father's request, and the juvenile court granted Father an evidentiary hearing on his petition. Judge Spear made a finding the best interests of the children might be promoted by Mother's request, and the court granted Mother an evidentiary hearing on her petition. The court ordered DCFS to file reports in response to the petitions.

A juvenile court only orders DCFS to prepare a response to the petition when the petition states a prima facie case. (See *In re Lesly G.* (2008) 162 Cal.App.4th 904, 913 ["the court ordered DCFS to prepare a supplemental report responsive to the petition. There would have been no need for a response from DCFS had the court concluded appellant's petition was inadequate on its face"].) "When the court has determined the [section 388] petition states a prima facie case, it is required to hold an evidentiary hearing." (*In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1359.)

Judge Borenstein and Judge Spear did not err in granting Father and Mother an evidentiary hearing on their section 388 petitions. As discussed above, each petition showed (1) a change of circumstance, and (2) the best interests of the children might be promoted by the proposed change in order. Thus, Referee Mordetzky had no cause to reevaluate the petitions months later and decide the petitions did not set forth a prima facie case.

DCFS agreed with Father and Mother that their section 388 petitions set forth a prima facie case supporting their requests for reunification services. The children's counsel urged the juvenile court to deny the petitions without an evidentiary hearing

13

because granting Father and Mother reunification services might affect the legal guardian's funding. There is nothing in the record indicating how much money the legal guardian received or that she even needed funding to care for the children. The legal guardian supported Father's and Mother's requests for reunification services. Before the juvenile court denied the petitions, Father and Mother were entitled to a full hearing where evidence regarding the legal guardian's funding could be considered.

We find the juvenile court abused its discretion in denying Father's and Mother's section 388 petitions without holding an evidentiary hearing. The petitions set forth a prima facie case demonstrating the best interests of the children might be promoted by granting Father and Mother reunification services. Father and Mother were sober, employed, had refrained from domestic violence and criminal activity, and had a history of stable housing. The three younger sons wanted to return to California to live with Father and Mother. DCFS and the legal guardian supported Father's and Mother's requests for reunification services. Father and Mother made the requisite showing for an evidentiary hearing, as found by Judge Borenstein and Judge Spear. The court had no cause to deny Father and Mother that hearing.

We reverse the order denying Father's and Mother's section 388 petitions and remand the matter for an evidentiary hearing on the petitions. We express no opinion on the outcome of that hearing.

14

**DISPOSITION**

The order denying Father's and Mother's section 388 petitions is reversed and the matter remanded for an evidentiary hearing on the petitions.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.